UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA TURNER,

        Plaintiff,

v.                                CASE No. 8:19-cv-1818-T-TGW

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

_____

## ORDER

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff does not identify any reversible error, the decision will be affirmed.

## I.

      The plaintiff, who was fifty-five years old at the time of the administrative hearing and who has an eleventh-grade education (Tr. 57,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

231), has worked as a collection clerk and service observer (Tr. 702). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on May 27, 2011, due to lupus, fibromyalgia, diabetes, sleep apnea, high blood pressure, possible glaucoma and arthritis in lower back and right arm (Tr. 57). The claims were denied initially and upon reconsideration.

The plaintiff, proceeding pro se, then received a de novo hearing before an administrative law judge. During the hearing, the plaintiff agreed to amend her alleged disability onset date to November 10, 2014 (see Tr. 32–37).

The law judge found, as of the amended onset date, that the plaintiff had severe impairments of lupus, diminished vision, obesity, diabetes, degenerative disc disease and hypertension (Tr. 14). He concluded that those impairments were disabling and granted the plaintiff's supplemental security income application as of November 10, 2014 (see Tr. 16, 18–19). The law judge dismissed the plaintiff's disability insurance benefits claim because her insured status expired before the amended onset date (see Tr. 696). The plaintiff, now represented by counsel, sought review

by the Appeals Council on the ground that she had evidence of an earlier disability onset date (see Tr. 374). The Appeals Council denied the request for review and let the decision of the law judge stand as the final decision of the Commissioner of Social Security (Tr. 1).

The plaintiff appealed the decision to this court (Case No. 8:16-cv-3180-JSS). Thereafter, the Commissioner filed an Unopposed Motion for Entry of Judgment with Remand (id. at Doc. 18). United States Magistrate Judge Julie S. Sneed granted the motion and remanded the matter for further administrative proceedings (id. at Doc. 20). The Appeals Council then issued a detailed Order (Tr. 74–44) remanding the case to the administrative law judge in order to, inter alia, allow the plaintiff to amend her onset date and give "further consideration of the claimant's onset date, with medical expert evidence" (Tr. 743).

In accordance with the Appeals Council Order, the plaintiff received another hearing before administrative law judge Glen H. Watkins. The plaintiff revised her disability onset date back to May 27, 2011 (see Tr. 694). Dr. Hema K. Sugumaran, a board-certified ophthalmologist, provided expert medical testimony (see Tr. 924–26).

-3-

The law judge found that, "[s]ince the alleged onset of disability ... the claimant has had the following severe impairments: lupus, decreased vision; obesity; diabetes; degenerative disc disease and hypertension (20 CFR 404.1520(c) and 416.920(c))" (Tr. 697).   The law judge determined two residual functional capacities for the relevant time period.   He concluded that (Tr. 697–98):

> [P]rior to April 6, 2015 ... the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift up to twenty pounds occasionally and lift and carry up to ten pounds frequently. The claimant can stand or walk for approximately six hours out of an eight-hour workday and sit for approximately six hours out of an eight-hour workday with normal breaks. The claimant could never climb ladders, ropes or scaffolds, but could frequently climb ladders ramps and stairs.[2]   The claimant could frequently perform fine manipulations bilaterally.   The claimant has to avoid even moderate exposure to extreme heat and avoid concentrated irritants such as fumes, odors, dusts and gases.   The claimant

---

[2]The law judge inconsistently said the plaintiff could "never" climb ladders and could "frequently" climb ladders.   The second assessment appears to be a typographical mistake since ordinarily the climbing of ladders, ropes and scaffolds is a distinct category from climbing ramps and stairs (see, e.g., Tr. 88).   Significantly, the operative hypothetical question to the vocational expert stated "frequent climbing of ramps and stairs" (Tr. 731).   Regardless, the plaintiff has not based any argument on this mistake (see fn. 3, infra).

must avoid exposure to even moderate hazards. The claimant could perform work requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception.

The law judge determined, based on the testimony of a vocational expert, that, despite these functional limitations, the plaintiff could perform past relevant work as a service observer (Tr. 702). Accordingly, the law judge decided that the plaintiff was not disabled prior to April 6, 2015 (Tr. 703).

The plaintiff's residual functional capacity beginning on April 6, 2015, contained the same limitations with one notable exception: the law judge found, as of that date, the plaintiff "could perform no work requiring visual acuity; peripheral visual acuity or depth perception" (Tr. 701). The law judge determined, based on the testimony of the vocational expert, that these limitations have prevented the claimant from performing past work or any jobs available in significant numbers in the national economy since April 6, 2015 (Tr. 702–03). Accordingly, the law judge found that, on April 6, 2015, the plaintiff became disabled and continued to be disabled through the date of the decision (Tr. 703). The Appeals Council denied the plaintiff's

-5-

request for review and let the decision of the law judge stand as the final decision of the Commissioner (Tr. 685).

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). Also, in this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2013, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

by substantial evidence.   <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore,   in   determining   whether   the   Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff's sole argument is that "substantial evidence does not support the Administrative Law Judge's visual limitation findings" for the period preceding April 6, 2015 (Doc. 24, p. 6).[3]   The law judge found that the plaintiff during that time period had decreased vision which limited

_____

[3]All other arguments are forfeited in accordance with the Scheduling Order and Memorandum Requirements, which directed the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and cautioned that "[a]ny contention for which these requirements are not met will be deemed forfeited and not evaluated" (Doc. 15, p. 2).

her to performing work requiring no more than frequent near visual acuity, frequent depth perception and occasional peripheral vision (Tr. 697–98).

In making this determination, the law judge considered the plaintiff's testimony that "her vision has progressively worsened" and that she "could no longer [] see to read a lot in 2012 and 2013, but she did not see a physician due to financial constraints and lack of insurance" (Tr. 698, see Tr. 727).   He also noted that the plaintiff reported "visual changes" to a consultative examiner in February 2013 and told a neurologist in January 2015 that she had blurry vision (Tr. 699).   However, the law judge explained that there was no medical evidence prior to April 6, 2015, supporting greater visual limitations than he included in the residual functional capacity.   In fact, the law judge stated that the plaintiff's visual residual functional capacity for the period before April 6, 2015, was "based largely on the claimant's testimony" (Tr. 700).[4]

---

[4]The law judge found that the plaintiff's testimony of greater limitations was not fully credible (Tr. 699–700).   That determination is supported by substantial evidence and is unchallenged by the plaintiff.   Accordingly, any such contention is forfeited (see Doc. 15).

The law judge's determination that the medical evidence for that period did not substantiate a more restrictive visual residual functional capacity is supported by substantial evidence.   The law judge relied upon the testimony of medical expert Dr. Sugumaran, who stated that she "d[id] n[o]t have a lot of information between 2011 and 2015" and that "[t]he first day I found a decrease in vision was April 6th, 2015 after looking through the medical record" (Tr. 718).   Dr. Sugumaran was referring to a letter dated April 6, 2015, from the plaintiff's ophthalmologist, Dr. Don J. Perez, which pertinently stated (Tr. 652):

> The above mentioned patient has been under my care since 11/10/14.   She was diagnosed with Pathologic Myopia, Primary Open Angle Glaucoma and Incipient Cataract.   Her visual acuity is 20/70 in the right eye and 20/80 in the left eye with best correction.   Her peripheral vision is very poor, it was shown on the Visual Field test performed in the office.

Dr. Perez's letter was not accompanied by any treatment notes.

The law judge "afford[ed] great weigh[t]" to Dr. Sugumaran's opinion because she is "[a] well qualified vision specialist and reviewed all the evidence available.   She responded to questions from me as well as the

-10-

claimant's representative.   Her opinion is also the most recent of record"
(Tr. 700).   Furthermore, the law judge gave "great weight" to the letter
submitted by Dr. Perez (id.), which underlies Dr. Sugumaran's opinion of
the plaintiff's visual limitations.

The law judge then cogently summarized his reasoning for the
plaintiff's visual limitations (Tr. 700):

> The claimant's treatment is extremely sparse,
> consisting of only a few appointments in some
> years.   The claimant only sought specialized
> vision care once during this period.   The claimant
> attributed her lack of treatment to financial
> constraints.   While this explanation is entirely
> plausible, the lack of treatment still results in an
> absence of findings to warrant a more restrictive
> residual functional capacity.   The claimant
> acknowledged that she was able to prepare some
> simple meals using a microwave, attend church
> occasionally, shop some, take care of her personal
> needs and perform limited housework.

The plaintiff argues that the law judge's determination is not
supported by substantial evidence because (Doc. 24, p. 8):

> ... the opinion of the medical advisor at the ALJ
> hearing contained a clear and unmistakeable [sic]
> error.   [S]he stated that the first evidence of a
> visual impairment was April 6, 2015. (T. 718).
> While the letter from Dr. Perez was dated April 6,

-11-

> 2015, he was referring to an examination dated
> November 14, 2014. (T. 652).   The ALJ
> previously found that the claimant could not
> engage in work activity which required near visual
> acuity, as of November 10, 2014. (T. 15).   There
> was no rational basis to find that claimant became
> disabled only as of April 6, 2015.

The plaintiff's argument is meritless because, as the Commissioner points

out, while Dr. Perez states his first appointment with the plaintiff was in

November 2014 (Doc. 26, p. 7),

> Dr. Perez' letter ... is dated April 6, 2015, [and]
> states that "her visual acuity _is_ 20/70 in the right
> eye and 20/80 in the left eye with the best
> correction" (emphasis added) (Tr. 652). ... The
> letter does not state it was at that level since Dr.
> Perez began treatment in November 2014 (Tr.
> 652).   Dr. Sugumaran testified there w[ere] no
> testing results in the record that would support a
> different date and Plaintiff does not point to any....

Thus, based on the plain wording of Dr. Perez's letter, the law judge could

reasonably conclude that the first medical evidence of the plaintiff's

decreased vision was April 6, 2015.   See Biestek v. Berryhill, __ U.S. __;

139 S. Ct. 1148, 1154 (2019) (Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.").   Notably, plaintiff's counsel questioned Dr. Sugumaran at

-12-

the hearing, but he did not ask Dr. Sugumaran whether those test results could be attributable to an earlier appointment (see Tr. 719–22).

The plaintiff also contends that the test results referenced in Dr. Perez's letter relate to November 2014 because that is when Dr. Perez diagnosed the plaintiff with pathologic myopia, primary open angle glaucoma and incipient cataract (Doc. 24, p. 8; see Tr. 652).   However, Dr. Perez referred to the plaintiff's test results in the present tense; *i.e.*, the plaintiff's visual acuity on April 6, 2015, and Dr. Perez's diagnoses in November 2014 do not, in themselves, shed light on the degree of the plaintiff's visual impairment before April 6, 2015.   See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[a] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the [plaintiff] must show the effect of the impairment on her ability to work."); Moore v. Barnhart, 405 F.3d 1208, 1214 n.6 (11th Cir. 2005) (It is the functional limitations that determine disability.). Therefore, this argument does not compel the law judge to find the plaintiff had greater visual impairments before April 6, 2015. See Adefemi v.

-13-

Ashcroft, supra, 386 F.3d at 1026–27 (It is not sufficient for the plaintiff to point to some evidence that supports her position; rather she must cite evidence that compels the finding she is advocating.).

The plaintiff emphasizes that the law judge had concluded in his prior decision that the plaintiff's visual impairments were disabling as of November 10, 2014 (Doc. 24, p. 8; see Tr. 14–19).   However, the plaintiff appealed that decision, and it was vacated.   Therefore, the plaintiff may not rely upon that more favorable determination in challenging this decision. Significantly, the Appeals Council expressly questioned in its remand Order the law judge's finding that Dr. Perez's letter established that the plaintiff had disabling visual limitations as of November 10, 2014 (Tr. 743).[5]

------

[5]The Appeals Council specified (Tr. 743):

> During the hearing, the Administrative Law Judge suggested an onset date of November 10, 2014 because Don Perez, M.D., the claimant's treatment provider, indicated in a letter that he began seeing her for vision issues on that day (Exhibit B21F). However there is no underlying treatment record from him that date.   Moreover, there is not medical expert opinion or other opinion evidence that supports that date.   Therefore, further consideration of the claimant's onset date, with medical expert evidence, is warranted.

-14-

In sum, the plaintiff has not identified any medical evidence supporting, much less compelling, greater visual limitations than determined by the law judge for the time period before April 6, 2015.   As explained in Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003), "the claimant bears the burden of proving that [s]he is disabled, and consequently, [s]he is responsible for producing evidence in support of h[er] claim."   See 20 C.F.R. 404.1512; 416.912 (it is the plaintiff's burden to present evidence showing how her impairment affects her functioning during the alleged disability period).   Significantly, the plaintiff was represented by counsel during the recent administrative proceedings.   Therefore, the burden was on the plaintiff and her lawyer to obtain medical evidence to prove the plaintiff's claim.   See id.

In this regard, Dr. Sugumaran testified that Dr. Perez's missing treatment records were crucial in determining the plaintiff's visual impairments (Tr. 720).   Significantly, the plaintiff stated that Dr. Perez's office had her treatment records, but that she would have to pay for copies (Tr. 724). Plaintiff's counsel acknowledged the importance of those records and had the following exchange with the law judge (Tr. 739):

-15-

> ATTY:   It appears that Dr. Perez may have some records that we are missing because we have that letter from him from 2015 but no test results.
>
> ALJ:   Well you call and figure it out. If you need more time, you can call the office.   You can track it down.
>
> ATTY:   All right.   I think that maybe (sic) essential.

However, the plaintiff did not submit any records from Dr. Perez, or any other medical evidence, substantiating the degree of the plaintiff's visual limitations during the time period before April 6, 2015 (see Doc. 24, pp. 6–8).   Therefore, the plaintiff has clearly failed to present evidence compelling the law judge to find that she had greater visual limitations during the pertinent time period.

The plaintiff also argues that the law judge "err[ed] in quantifying the plaintiff's visual limitations in terms of frequency [e.g., occasional, frequent, constant] rather than quality" (Doc. 24, p. 6) (emphasis omitted).   More specifically, the plaintiff contends that a limitation to "frequent" visual acuity is "nonsensical" because "generally a person can either see a certain sized object or cannot see it" (id., pp. 8, 9).

The plaintiff's argument is off the mark.    Physicians regularly opine quantitative visual limitations to accommodate individuals who have some, but not total, vision loss.    See, e.g., Arnold v. Colvin, No. 3:14-cv-1064-J-MCR, 2016 WL 1170907 at *3 (M.D. Fla.) (listing cases). Concomitantly, the Dictionary of Occupational Titles (DOT) uses the terms constant, frequent and occasional to distinguish between vision requirements for jobs.    For example, the plaintiff's previous work as a service observer involves frequent near acuity, but no far acuity or depth perception. See DOT 239.367-026, 1991 WL 672228.

The plaintiff cites to Reed v. Berryhill, 8:17-cv-679-T-DNF, 2018 WL 4520363 (M.D. Fla.), and Gainey v. Commissioner of Social Security, 6:12-cv-1579-Orl-DAB, 2014 WL 505117 at *6 (M.D. Fla.), for her contention that visual limitations may not be quantified; however, these cases are factually inapposite.    Thus, the law judge in Gainey "erred in not recognizing that Plaintiff was blind in her right eye." 2014 WL 505117 at *6.    In Reed, accommodations were not included for the plaintiff's "blindness in her left eye." 2018 WL 4520363 at *4.    In contrast to the undisputed medical evidence of total eye blindness in Reed and Gainey, the

-17-

plaintiff presented no medical evidence whatsoever substantiating her visual acuity and depth perception limitations for the pertinent time period.

As the Commissioner notes, the plaintiff's contention that the law judge "provided no analysis explaining how Plaintiff's visual acuity of 20/70 in one eye and 20/80 in the other eye limits her to only frequent near acuity" is meritless because it is "based upon the false premise that the ALJ determined [that the plaintiff] had visual acuity of 20/70 in one eye and 20/80 [in] her left eye prior to April 6, 2015" (Doc. 26, p. 8).   The law judge found that prior to April 6, 2015, the plaintiff "could perform work requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception" (Tr. 697–98).   He found further that on and after that date the plaintiff "could perform no work requiring visual acuity; peripheral visual acuity or depth perception" (Tr. 701).   There is nothing inconsistent about those findings.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**.
The Clerk shall enter judgment in accordance with this Order and **CLOSE**
this case.

DONE and ORDERED at Tampa, Florida, this _____21st_____ day
of September, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE